UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MIGUEL OSCAR URBAEZ PEGUERO,<br>      Petitioner,<br><br>v.<br><br>MICHAEL NESSINGER, *in his official capacity as Warden of the Donald W. Wyatt Detention Facility*; DAVID T. WESLING, *in his official capacity as Field Office Director, ICE Boston Field Office*; MARKWAYNE MULLIN, *in his official capacity as Secretary of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States*; and DAVID VENTURELLA, *in his official capacity as Acting Director of ICE*,<br>      Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 26-cv-456-JJM-AEM |

ORDER

Miguel Oscar Urbaez Peguero has filed a habeas petition under 28 U.S.C. § 2241, arguing that his arrest and continued detention by Immigration and Customs Enforcement ("ICE") is unlawful, and that he must be released and given a bond hearing before an immigration judge ("IJ") pursuant to 8 U.S.C. § 1226(a). ECF No. 1.

The Government has moved to dismiss Mr. Urbaez Peguero's habeas petition and argues that he is lawfully detained under 8 U.S.C. § 1225(b)(1). ECF No. 4 at 3. As this Court has emphasized before, the Government's power to detain a noncitizen

must be grounded in a specific provision of the Immigration and Nationality Act ("INA"). *See Gonzalez Lopez v. Wesling*, No. 26-cv-047-JJM-AEM, --- F. Supp. 3d ---, 2026 WL 309607, at *1 (D.R.I. Feb. 5, 2026); *accord Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018). But, as explained further below, Section 1225(b)(1) does not authorize Mr. Urbaez Peguero's detention.

To begin, Section 1225(b) applies to "applicants for admission" who are generally encountered "at the Nation's borders and ports of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). An "applicant for admission" is defined as a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Id.* (quoting 8 U.S.C. § 1225(a)(1)).

Noncitizens specifically covered by Section 1225(b)(1) are normally subject to expedited removal proceedings, meaning they are "ordered removed 'without further hearing or review.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). Detention under this provision is mandatory, and the noncitizen is not guaranteed any right to a bond hearing before an IJ. *Id.* at 299, 302.

Here, in 2021, Mr. Urbaez Peguero entered the United States from the Dominican Republic without inspection, and the Department of Homeland Security ("DHS") shortly thereafter processed him for expedited removal. *See* ECF No. 1 at 1; ECF No. 4 at 2; *see also* ECF No. 4-1 at 2 (displaying Mr. Urbaez Peguero's Notice and Order of Expedited Removal). Thus, at the time of his entry, Mr. Urbaez Peguero's status was that of an applicant for admission who was lawfully detained under Section 1225(b)(1). *See Jennings*, 583 U.S. at 287.

On or about February 23, 2022, Mr. Urbaez Peguero's circumstances changed. The Government provided him with a bond hearing, and an IJ ordered Mr. Urbaez Peguero released on bond. ECF No. 4 at 2; *see also* ECF No. 4-4 at 2 (displaying the IJ's bond determination in Mr. Urbaez Peguero's case). The IJ's bond order expressly referenced 8 C.F.R. § 236.1(c), which is the regulation that directly corresponds with the standard for bond hearings conducted under a completely separate provision of the INA, 8 U.S.C. § 1226(a). ECF No. 4-4 at 2 ("Request having been made for a change in the custody status of [Mr. Urbaez Peguero] pursuant to 8 CFR 236.1(c), . . . it is hereby . . . ORDERED that the request be granted and that [Mr. Urbaez Peguero] be . . . released from custody under bond of $5,000."); *see Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (recognizing that 8 C.F.R. § 236.1(c) sets forth the governing "standard for section 1226(a) bond hearings before an IJ").

For context, Section 1226(a) permits the Government to detain certain noncitizens "already in the country" during the pendency of their removal proceedings. *Jennings*, 583 U.S. at 289. It is often called the "discretionary detention statute" because it permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General," or their designees, "pending a decision on whether the [noncitizen] is to be removed from the United States." *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. 2025).

The First Circuit has recognized that Section 1226(a) detainees have a due process right to request a bond hearing at the outset of their detention at which the

3

burden is on the Government to prove that their detention must continue either because they pose a danger to the community by clear and convincing evidence or because they pose a flight risk by a preponderance of the evidence. *See Hernandez-Lara*, 10 F.4th at 41.

This is ultimately dispositive in Mr. Urbaez Peguero's case. As of 2022, an IJ has granted him bond under Section 1226(a). *See* ECF No. 4-4 at 2. "This act has 'extinguished the legal fiction' that he is physically present in the country without having effected an entry." *De Andrade v. Nessinger*, No. 26-cv-183-JJM-AEM, 2026 WL 925648, at *5 (D.R.I. Apr. 6, 2026) (quoting *De Andrade v. Moniz*, 802 F. Supp. 3d 325, 332 (D. Mass. 2025)). "Contrary to what the Government says, now that he has entered, [Mr. Urbaez Peguero] can no longer be treated as an 'applicant for admission' subject to expedited removal and mandatory detention under Section 1225(b)(1)." *Id.* Instead, he "must be treated like any other unlawfully 'present' non-citizen—and the lawfulness of his detention is governed by 8 U.S.C. § 1226." *De Andrade*, 802 F. Supp. 3d at 332.

For its part, the Government acknowledges "that the legal issues presented in this Petition are similar to those recently addressed by this Court" in *De Andrade v. Nessinger*, No. 26-cv-183-JJM-AEM, 2026 WL 925648 (D.R.I. Apr. 6, 2026). ECF No. 4 at 3. As such, the Government submits that, "[s]hould the court apply the reasoning in [*De Andrade*], it would likely find that [Mr. Urbaez Peguero] merits habeas relief." *Id.* at 3.

4

The Court agrees. As in *De Andrade*, the Court concludes that Mr. Urbaez Peguero cannot be detained under Section 1225(b)(1), and the Government has not established any alternative authority for his detention. Accordingly, the Court finds that Mr. Urbaez Peguero merits habeas relief, and it will therefore GRANT his Petition. ECF No. 1.

As for next steps, there is a dispute over what remedy is proper for Mr. Urbaez Peguero. The Government argues that the Court should deny Mr. Urbaez Peguero's request for immediate release from ICE custody, and asks that he only be granted a bond hearing. ECF No. 4 at 1 n.1.

Of course, this is completely antithetical to the Government's original position. The Government has consistently maintained that those who are subject to 8 U.S.C. § 1225(b)(1) are statutorily *ineligible* for bond hearings. *See, e.g.*, *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025) (citing *Jennings*, 583 U.S. at 298). And, in this case, the Government does not claim that it has the authority to detain Mr. Urbaez Peguero under any statute other than 8 U.S.C. § 1225(b)(1). But again, this statute does not apply to Mr. Urbaez Peguero's particular circumstances.

Recall that the Government's power to detain *must* be grounded in a specific provision of the INA. Thus, considering that the Government did not have the legal authority to detain Mr. Urbaez Peguero in the first place, and given that it fails to cite any other authority under which he may be detained, it follows then that the proper remedy is to order Mr. Urbaez Peguero's immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("It is clear . . . that the essence of habeas corpus

5

is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

The Court will also order a bond hearing for Mr. Urbaez Peguero pursuant to 8 U.S.C. § 1226(a). At the bond hearing, the Government will be free to argue to an IJ that Mr. Urbaez Peguero should be detained. However, the Government will have the burden of proving this point either by clear and convincing evidence that he poses a danger to the community or by a preponderance of the evidence that he poses a flight risk. *See Hernandez-Lara*, 10 F.4th at 41.

## CONCLUSION

The Court therefore GRANTS Mr. Urbaez Peguero's habeas petition. ECF No. 1. The Government is hereby ORDERED to **release Miguel Oscar Urbaez Peguero immediately**. Per its request, the Government is permitted to transfer Mr. Urbaez Peguero to ICE's Boston Field Office in Burlington, Massachusetts for the sole purpose of processing his release and allowing for any return of property. ECF No. 4 at 1 n.1. However, the Court DENIES the Government's additional request to place on Mr. Urbaez Peguero "any monitoring equipment deemed appropriate." *Id.* Because the Government did not have the lawful authority to detain Mr. Urbaez Peguero in the first place, the Court will not permit the Government to keep him "in custody" through the use of monitoring equipment pending the bond hearing. *See Morales v. Hyde*, No. 26-cv-093-JJM-PAS, 2026 WL 508811, at \*3-4 (D.R.I. Feb. 24, 2026) (denying similar request from the Government because "[i]t does not follow . . . that ICE gets to keep [the petitioner] 'in custody' once he leaves the Wyatt Detention

6

Facility"). Effectuating Mr. Urbaez Peguero's transfer to Burlington shall not in any way impede his **immediate release**.

The Government is also ORDERED to **provide Miguel Oscar Urbaez Peguero with a bond hearing before an IJ** under 8 U.S.C. § 1226(a) within ten (10) days of the date of this Order. Should it choose to pursue Mr. Urbaez Peguero's continued detention, the Government must show why less restrictive alternatives to detention would be inadequate for it to achieve its goals. *See Higiro v. Nessinger*, No. 26-cv-105-JJM-AEM, 2026 WL 710297, at *8 (D.R.I. Mar. 13, 2026) (finding that due process requires IJs to consider alternatives to detention at bond hearings to ensure that detention is not arbitrarily imposed and bears a reasonable relation to the Government's interests). The IJ shall consider any alternatives to detention *before* making a finding as to flight risk or dangerousness. *See Brito v. Garland*, 22 F.4th 240, 254 (1st Cir. 2021) (noting that to require otherwise would be "to put the cart before the horse").

Finally, the Court ORDERS the Government to **file a status report** within five (5) days of Mr. Urbaez Peguero's bond hearing, stating whether he has been granted bond. If Mr. Urbaez Peguero's request for bond is denied, the Government shall state the reason for that denial and whether Mr. Urbaez Peguero has been re-detained by ICE.

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*


_____

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

July 16, 2026

8